This is the case of Marriage of Attig We have Mr. Michael Berg for the appellant and Ms. Peggy Reimann for the affidavit. You may begin whenever you are prepared. Good morning, Your Honors. Good morning. I'm Michael Berg and I'm the attorney for the petitioner in this case. I filed a divorce for her early in 2005 and subsequently became her attorney as she became the appellant in this case. This case is before you today because in April of 2005, my client left her husband after being battered in Murfreesboro and moved to the city area of Joliet, New Lenox, Illinois. She took with her that time her three-year-old son, Jake. When she left, she went to her family in the New Lenox, Joliet area. She got a job there with her father early that summer and she put her son, Jake, in daycare while she was working. She was the proverbial single working mother at that time. She dropped Jake off for daycare when she went to work and she picked him up from daycare when she got back from work. That occurred during the summer of 2005. In the fall of 2005, the divorce became – there was a temporary joint parenting order entered and there was – and then in November of 2005, the divorce went through. She was divorced. There was a joint parenting order entered and the Merrill Settlement Agreement. During that time, the whole time, and before the joint parenting agreement was entered and even prior to the temporary joint parenting agreement being entered, she was a single mother. She was working and dropping Jake off at daycare. She continued to work and drop Jake off at daycare all through the proceedings until the trial court took her son away from her. During that time, the joint parenting agreement, which went into effect in November of 2005, it was – it laid off the visitation until approximately the end of August, beginning of September of 2007. During that period of time, the joint parenting agreement, the visitation times, was followed religiously by both parties. In the fall of 2007, they anticipated that Jake was going to be starting school and he did. He started kindergarten in the Joliet area. The visitation agreement – there was no longer any visitation agreements, but for the next – until the next year, until the modification hearing was held, they continued to cooperate with visitation. The respondent continued to give visitation even though there was no agreement as to the visitation. In fact, between September of 2007 and September of 2008, the respondent had 98 days of visitation, 58 days of those being in the summer. Between September of 2008 and August of 2009, the respondent had 80 days of visitation, 47 of those days being in the summer. He got holidays, he got spring breaks, he got many times and many hours and many days with his son. I lay some of these facts out, to your honors, because the evidence was at the hearing that this was all the same from before the joint parenting agreement was signed until after the joint parenting agreement no longer was in effect and as they continued to cooperate. Nothing changed. She was a single mother. She worked. She dropped her son off at daycare in the morning. She picked him up at night. When her son began school, she took him to school or dropped him off at daycare. He was taken to school and she was picked up after school by any number of individuals. One, the YMCA. She had a friend that she paid for the daycare after that. They picked up the child. Arrangements were always made. The daycare arrangements were always the same. She still lived in Joliet, which was the same as when the joint parenting agreement was signed. Joliet didn't move. Murphy's girl didn't move. She lived in the same place, the same house when the joint parenting agreement was signed as she did at the time of the hearing. I say this because the statute that we use in this case says that the court should only consider in modification of custody those facts that arise after the implementation of the joint parenting agreement. There was a change in her living situation with respect to a partner, Paramore, that came in to... She had a boyfriend, Your Honor. I believe that's what the evidence was. And I guess there was some evidence that there were issues with driving without a license and... That was brought up in the GAO report. There was no evidence presented at the trial court as to him driving. There was some evidence that he had been convicted of a driving without a license revoke charge during the time of when the modification petition was pending. But there was no evidence at the trial court other than the conviction that was brought to the court's light by the GAO report. And that's not evidence. That's your position, right? Yes, the GAO report in this case was not evidence. Do you want to talk about that now? I mean, I'm having trouble following where you derive that position from. That the GAO report is not evidence? Yes. The statute, Your Honor, that the GAO was appointed under indicates that the GAO is to give a recommendation to the court alone. I just say recommendation as to what her feelings, his or her feelings, or her recommendation is as to the custody of the child. Does the statute actually say that they can file a report in lieu of providing testimony as an alternative? The statute, I believe, states 750 ILCS 5506, the representation of a child, the guardian ad litem. So Section 2, the guardian ad litem shall testify or submit a written report to the court regarding his or her recommendations. Okay, that's what I meant. They can, in lieu of testifying, just submit a report with recommendations. With a recommendation. That's correct, Your Honor. And if you're saying that the court can't consider that, for what purpose do we have a GAO report then? What I'm saying, Your Honor, and I understand your point, what I'm saying is that the facts and evidence that the GAO puts in her report is not evidence before the court. It's evidence supporting her recommendation only. It's not, it doesn't, it's, the evidence that's put in the GAO report is not subject to cross-examination. It's not subject to being brought into the court and tested for its truth or veracity through any party. You are allowed to cross-examine the GAO under sworn testimony, correct? That is correct, Your Honor. We are, we can, but that only goes to, my position is that only goes to the weight that is given per position or per opinion. Well, it says here that you can cross-examine regarding the report or the recommendations. That's correct. And I believe that goes to earlier in that statute where it says that they can submit a report if they want to or they can testify also if they want to. They don't have to do either one. They shall testify or submit a written report. She did both. She did both in this case, Your Honor. She testified, she was called for cross-examination to go after what she wrote in her GAO report as a basis for her recommendations. And, for example, you were permitted, and I don't know to what extent, you questioned her about the driving without, with the child while revoked. I questioned, I believe the transcript would indicate that I questioned her about where she got her information from and how she used that information. And the driving without revoke, she did present a copy of it. It was a copy in her GAO report of the condition of the boyfriend of the mother. But you don't think it was proper then for the court to consider that as evidence? I don't think it's proper, and I believe that the law that holds or states that if the best interest of the child, that they have to make a connection between the best interest of the child and the evidence that is being presented, how that affects the best interest of the child. Well, I think it's pretty clear with that allegation that if he's driving the child in the car, that without license, that certainly could be a concern, a health, safety concern. And that becomes the problem with using the GAO report as evidence, because the only mention of the boyfriend driving the child around was from a 7 or 8-year-old child that is being questioned by a GAO. We don't know the background of that. My client did not get an opportunity to contradict that. There wasn't an opportunity to cross-examine that statement that the court was considering as evidence. But that goes back to the beginning where the court, the trial court, did not use the correct standard of proof in this case. It has been conceded. I believe that's been conceded right. That being conceded, there was nothing in the record that we can tell that the court didn't consider anything with the clear and convincing standard that is required in the statute itself. The clear and convincing goes to whether the modification was necessary for the best interest of the child. And in that, the moving party needs to present some evidence. I mean, in this case, there was basically no evidence that the modification being proven by clear and convincing evidence that it was in the best interest of the child to change the custody, the custodial parent from the mother to the father. Do you think it's in the best interest of a child for a parent to tell the child who's seven years old to tell the GAL things that he may not want to tell them? Again, Your Honor, that goes to the part of the GAL's report being used as evidence. That came only from the mouth of the seven- or eight-year-old. That bit of evidence was not able to be cross-examined to be determined how truthful that was. And the mother was never given an opportunity by the GAL to refute what she had supposedly told the seven- or eight-year-old child. Well, why not? All you have to do is ask the question. The GAL's on the stand. Did your mother say to you, tell the GAL that you want to stay with me? And I believe in the transcript there is questions as to whether she ever told the – if she ever told the seven- or eight-year-old what to tell the GAL. And she denied that. In court, under oath, she denied that. But we never got – because it only came out in the GAL report – we never got the evidence before the court that the GAL – that that is what the mother told the child. Because that was not – it just came in as evidence from the GAL report, nothing before the court as far as evidence as far as admissible evidence. Do you have anything that – any cases – I see you cited a 1907 case for the – one of the cases you cited for the proposition that we can't consider the GAL report as evidence. And two other cases in the 60s, and I believe the statute in question became effective – and I don't have the exact date, but in the 70s. I believe the statute became effective around 1977. Right, in the 70s. Around there. So do you have anything that postdates the statute? No, Your Honor. I was unable to find any law regarding a GAL report being used as evidence in a custody proceeding. And – After this statute became effective. After the statute became effective. Which allows actually the filing of the report for consideration. That is correct, Your Honor. There was – I was unable to find any case law or any law other than the statutory law dealing with using a GAL report as evidence. And the best I could find was what I cited to this court in the case from 1906 and another from 1960 and another from 1967. That was all I was able to find in my research dealing with court taking matters outside of evidence being heard in the trial court. But even with that, Your Honor, Your Honors, by the court not using the correct standard of proof – and I understand it's been conceded by – even if you take the evidence in this case that they presented, and even if you take the GAL report, which I'm arguing is not evidence, should not be considered as evidence, just as a recommendation to the court, you still have – You can finish your thought. Is that one minute? I'm sorry. That's your time. I think you had 15 minutes to argue. That is correct. So you can – if the thought that you weren't complete, you'll have the opportunity to come back. I'll have the opportunity to come back.  Thank you, Your Honor. Yes, you will. Thank you. So, Ms. Freiman, you may proceed. Great. Please report, counsel. My name is Peggy Raymond, and I represent the respondent appellee, Timothy Addy. This matter comes before this court on an expedited appeal on the modification of custody and visitation order from the Circuit Court in Jackson County. The appellant has raised three issues in their appeal. The first issue is whether the trial court applied the wrong standard of proof. And while I agree that the wrong standard of proof was used in this matter, I believe that the evidence was so overwhelmingly in my client's favor that I believe it was harmless error. I believe that the first and second – excuse me, first and third arguments that the appellant raised kind of dovetails together, so I will address those at the same time, Your Honor. In this matter, the trial court heard testimony for over three days. The parties in the guardian ad litem all three testified exclusively. There was multiple other parties that also testified. The guardian ad litem filed a 35-page report along with attachments. She also filed a supplemental report that was several pages long. There were numerous things to show that the trial court made the correct decision, even though they applied the wrong standard. Isn't it important to – I mean, we can't give any consideration to demeanor and credibility in testimony at this point. That's correct, Your Honor. And so how does that play into this harmless error argument? Well, I believe that – If the court really didn't think she was modifying custody at all. But I believe when the court looks at the record, looks at the documents and her docket entries, this court will notice all of the factors that she did consider. She specifically stated she considered the GAL report, which she had every right to do, and to give that weight. She took into consideration the parties' work schedules, the child's schedules. She considered everything that was –  Yes, Your Honor. Do you want us to re-weigh the evidence and apply a different standard of care, or how would we do this? No, I don't believe that this court should re-weigh the evidence. But I think whenever you look at the situation as a whole, I think that there is enough evidence to support the trial court's ruling, even using the correct standard of proof. And I believe I cited in my brief, Your Honors, Ingrate Mary and Nelson Meyer. And the court there – excuse me – the appellate court said that in looking at the transcripts, looking at the record as a whole, even though the trial court stated in their oral ruling the wrong standard, they did use the correct ruling in the written order, that in looking at it as a whole, there was enough evidence to support the finding using the correct version. But she didn't, at any time, appreciate she was using the wrong standard. That's correct. So the case that you cited may have been an oversight because the court did use the correct standard when it was reduced to judgment. Correct. But I don't know in the facts of that case who wrote the order, how that was all done. Well, we have to presume the judge wrote it. Okay. Which in this case, you know, I do know that one of the attorneys prepared the written order in our case at hand. But I still believe that all of the facts that came out at the trial support the finding that Tim Adick shouldn't be receiving residential custody of his son and that there was sufficient evidence to support that ruling. The mother's boyfriend, Noel Neverez, I apologize, I'm not real good with the name. He had a criminal history. One of his criminal convictions happened while he was residing with the mother and the minor child. The minor child related that Noel drove him around, picked him up from school. He didn't have a driver's license. There was great concern about that. The guardian ad litem offered to speak with the boyfriend, told Christine she was willing to speak with the boyfriend, was never contacted by anyone to say, hey, boyfriend wants to set up a time to meet with you. He's willing to talk. He's willing to be involved. Christine also didn't call him as a witness in this trial. If he's that involved with her and her child, I believe he would have been expected to be there if he was an appropriate person to be in this child's life. There was also multiple problems with visitation. The visitation order expired in August of 2007 when Jacob started kindergarten. Yes, the parties were able to work out times for my client to have visitation, but as he testified, many times those were changed at Christine's whim. She lived in Joliet with the child. He was down here in Murfreesboro. If she called him up and said, oh, hey, I'm not going to meet you, you can't get Jake this weekend, there wasn't anything he could do about it. The child was with her. He had no orders that said he was to have the child at this time. He basically had to go along with her, and that's what prompted the filing to set the visitation schedule, and then other matters also prompted him to ask for the change in custody. At one point in time, he was having so many difficulties with the visitation that he even went so far as to hire a private investigator to try and prove that she was lying to him about the child's schedules and activities and why he wasn't getting visitation. The second issue that, well, excuse me, I was going to go ahead and address the third issue, that there was enough evidence. The Illinois Supreme Court has said that the trial court should be afforded great deference in determining custody because they are in the superior position to judge the credibility of the witnesses. Would that be an argument, though, to remand it back for the court to apply the proper standards since they are in the best position to make those determinations, as you just said? I still believe that there was such overwhelming evidence in this case, Your Honor, that even if it's sent back on a remand, I believe we will still end up with the same decision that Tim Addick should be awarded residential custody of this child, and I think it would just involve a greater waste of judicial time and more disruption for this child. Christine argued that there was no evidence to support changing residential custody. I went through the problems with her boyfriend. Christine basically lied to the guardian and lied about her relationship with his son. Jake's talking to the GAL, telling him that Noel's involved in their life. When the GAL approaches Christine about this, he's a guy I'm dating, not really that involved with him. That's not what Jake was saying. Jake was saying he's at the house, he's basically living here. Jake also related to the GAL that Christine was telling him what to say to her. Tell the GAL you want to live with your mom. Tell the GAL you want to keep things the same way. Jake finally admitted towards the end, once he'd gotten to know and trust the GAL a little bit more, Mom's been saying this the entire time. And the GAL reported that this 7- or 8-year-old child was very upset by this, as anyone should be. The GAL also testified, and there was testimony from the parties regarding a Craigslist incident. Somebody got on the Internet, said Christine's having a cell, getting rid of everything. This 7- or 8-year-old child thought his father had done this so that all of his possessions, all of his mother's possessions would be gotten rid of. He asked the GAL on two separate occasions, have you ever found out who was responsible for this? Even once Christine knew that it was not him, nothing was ever said to Jake to show that, no, your dad didn't do this, this was somebody else. Can I ask you what your position is on how the court should have considered the guardian of items report? Is it evidence? I believe it is, Your Honor. When a written report is filed and submitted to the court, it's filed, stamped by the clerk, it's placed in the court file, and to me it becomes part of the record and is evidence the same as any other pleading. If this court does not consider it should be evidence, I think in this situation, by the GAL being called as a witness by Christine's own attorney and being cross-examined on it, it came into evidence by that way as well. If you review the transcript of this case, the GAL was on the witness stand for a great length of time, almost as long as the parties themselves. The attorneys went into great detail of her report, referred a page such and such, paragraph such and such in your report. That was done throughout her testimony, Your Honors. Almost every single page of her report came in via her testimony while she was called as a witness. I agree. That's probably as good a GAL report as I've ever seen. But here's my concern. There's nothing in this record that gives the trial court's position about what has been a substantial change in circumstances. Clearly they referred to 602 throughout the order in her written. It's the wrong standard. Yes, Your Honor. And I agree. She did use the wrong standard. But, again, in looking at her docket entry, I believe. Did the attorney redraft the order that she signed? Do you know who did it? Because he referred to 602. I'm not sure which attorney prepared the order, Your Honor, but I know that the order was based upon her docket entry that she prepared. And that was, you know, the judge's ruling was in the docket entry and the order was prepared to reflect her ruling. But we presume that all along she was under the wrong presumption because she states that it's not really a change in custody. Correct. I believe from the reading of the transcript. It's pretty clear. Yes. But, again, I believe whenever you look at everything as a whole, there was sufficient evidence to show that even if this is remanded, you're going to end up at the same place. Counsel for Christine also said they didn't have the opportunity to contradict the GAL's report. I don't believe that's a correct statement, Your Honor. The Guardian-Alliance report was filed on June 4th of 2010. The first day of the trial, I believe, was August 9th, and then there was a continue to August 11th and August 12th. I may be off my dates a little bit, but basically they had almost two months to review the Guardian-Alliance report and determine if there were any additional witnesses that needed to be called to review anything that was contained in there. That's part of the purpose in a GAL report, getting in in time, because if you don't agree with something, you call in the witnesses who can refute those statements. A Guardian-Alliance is to be the court's eyes and ears. They are to go out and be able to dig and get more information than what a trial court may be able to do just in a trial setting. Is there anything, I haven't read the trial court's record, the record, but the trial court in its docket entry says per the court's oral findings of 8, 12, 10. Did the trial court at any time in those oral findings use the phrase substantial change of circumstances, the correct standard that we could rely upon if that was the way this case was supposed to go? Because otherwise I'm not sure where it's going to go. I'll be honest with you, Your Honor. I can't recall off the top of my head if she used that in her oral ruling. Because she clearly didn't do it in the docket entry in the written record. Correct. My recollection is that she went through the factors of 602 as well in her oral argument, but I'm not 100 percent certain on that. I know that she referenced that she considered the Guardian and Lions report, that she considered the party circumstances, but I don't recall off the top of my head at this time, Your Honor. I believe that it was appropriate for the trial court to give way to the GAO report and use that as part of its basis in making its ruling. I don't believe that based upon the court's ruling that that was their sole, her sole basis in changing custody. Christine also argued that the GAO failed to adequately investigate this matter. I think that's completely ridiculous, Your Honor. We had a 35-page report with attachments. We had a supplemental report. She talked to numerous people. They complained that she didn't talk to the child's kindergarten or first grade teacher. She talked to his current second grade teacher. They complained because she didn't get the school records. She testified that she asked several times for those, never got those, so she spoke directly with the teacher about what those grades were. They also complained that she didn't visit either home. With Christine living in Joliet, it didn't make economic sense for the parties for her to travel all the way up there, check out the house, when there was no allegations that the home was not business. Now, Christine did raise the argument that every time the GAO saw Jake, he was down here having fun with his dad. And the GAO said, I think that is a valid concern. I tried to adjust my questioning and my thinking on that basis. But she did offer to meet with Christine and Jake when she came down here for mediation, and Christine said, no, I don't want to do it. So she blew off the opportunity that the GAO gave her. For these reasons, Your Honor, we were asking that this court confirm the trial court's decision in awarding Timothy Addy presidential custody of this child. Thank you, Your Honors. Thank you, Ms. Reingold. Mr. Burke, you have rebuttal opportunity. I think the court is pointing out some of the problems with using the GAO report as evidence. And we'll go back to A64, which is the appendix to the record, which is one of the last pages of the GAO report. And the GAO states in there, I believe she has made an active effort to subvert that relationship in every possible opportunity. I believe in this case that the GAO report was biased and prejudiced. If you look at the GAO report, it says very seldom does it say anything nice about the petitioner. But it says the petitioner has subverted it every possible opportunity. And if you look at the record, that's not correct at all. The petitioner left because she was battered. That was never told to the son. The petitioner got two orders of protection against the respondent. That was never reported to the son. The petitioner worked diligently all through there, all through the history of the visitation, to make sure that Jake had a relationship with his father. The problem with the GAO report is exactly what the court has pointed out, I believe. Because if the court takes the GAO report as evidence, then the respondent doesn't have to prove anything in the court. She can just rest on the GAO report, and then the petitioner, to answer, has to bring in all the evidence to try to refute what is in the GAO report. The petitioner has to try to disprove everything said in the report. The petitioner doesn't get to cross-examine the statements. The only person that heard those statements was the GAO. Those statements by Jake were all hearsay. The GAO could have called the child as a witness, GAO, or the respondent could have asked for an in-camera interview with the child to get the child's statements before the court as evidence. That did not happen. So could the mother have done that? The mother could have done that, too. That is correct, Your Honor. She chose not to. Because there was the evidence of what the child had said wasn't before the court. It was only in the GAO report. Using the GAO report as evidence allows the GAO basically to be a super-judge in this case. The GAO can consider all types of evidence, whether they're admissible or inadmissible, without telling anybody exactly what she's doing. The party has no opportunity to cross-examine. The party has to guess as to what the rationale was behind the GAO's report. The GAO gets to present only facts that she wants the judge to consider. Basically, at the end of the representation statute, I believe the law kind of has a warning in it, where it says basically, it was brought up in the reply brief, that in no event is this section intended to or designed to abrogate the decision-making power of the prior effect. Any appointment made under this section is not intended to nor should it serve to place any appointed individual in the role of surrogate judge. And I believe that's exactly what happened in this case. The GAO got to be the surrogate judge in this case. Without a trial court getting the evidence before it to determine the credibility of the evidence before it, to have that evidence tested before it, it just gets to come in the GAO report. And no chance to cross-examine that evidence. A number of things that the... What is then the purpose? I mean, the statute clearly anticipates that the court is going to hear the underlying basis for the GAO's opinion, correct? Right. Then what are they... are they supposed to hold their ears when that's presented? Or why is that even in here then? It should... to follow your argument, it should be just that the GAO files an opinion about where the child should be placed. Based on the child's wishes. Yes, Your Honor. Based on the child's wishes. Well, I meant recommendations, but the court can't consider the underlying basis of the recommendations. That's basically what you're saying. The court can consider the rationale underneath the basis, but not use that rationale as evidence. The evidence, the GAO, what she finds, Your Honor... You're saying that the court has to... the party would therefore have to put on independent evidence for every factual basis that supports the GAO's report? Yes, Your Honor. If the GAO discovers these things in her investigation, then she is free to call those witnesses to present that evidence to the court to determine whether or not that evidence is valid. To determine whether that evidence is admissible. They want to point to the private investigator. Well, the GAO never, in this case, never interviewed the private investigator, never checked out the facts behind the private investigator, never called even the workplace of the petitioner to see if what the private investigator put down was true. So you're saying the court would only be able to consider as appropriate evidence the GAO's impressions of observing the home and talking to the child, etc., but not any underlying facts that may be hearsay? Right. Our position, Your Honor, is that the court should only consider admissible evidence to determine whether or not they modify custody and whether that admissible evidence becomes or goes past that clear and convincing standard that is set out in the statute. And we ask the court that based on the transcript, based on the record, to not only reverse it, but not to remand it, but just reverse it based on the fact that there was no evidence presented in this case that was clear and convincing that the modification needed to be done to serve the best interest of the child. Thank you. Thank you, Mr. Burke. Thank you, Ms. Reiner. We will take the matter under advisement. Thank you.